IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MR RAFAEL VAZQUEZ | : | No. 4:19-cv-1371 |
| (Plaintiff) | : | Judge Mannion |
| | : | Magistrate Judge Arbuckle |
| VS. | : | |
| | : | Jury Trial Demanded |
| WETZEL, ET AL., | : | |
| (Defendants) | : | |

FILED WILLIAMSPORT SEP 08 2020 PER_____ DEPUTY CLERK

### PLAINTIFF'S AMENDED PETITION:

COMES NOW, Mr. Rafael Vazquez, Plaintiff pro se, who represents the following Amended Petition, and avers as follows:

### I. INTRODUCTION

1. This action places before the Court a lawsuit involving agents of the Pennsylvania Department of Corrections who were entrusted with providing care and custody to the Plaintiff as an inmate confined by the Commonwealth of Pennsylvania.

2. This complaint alleges that the named defendants have acted with "deliberate indifference" to the Petitioner's right to be free from Cruel and Unusual Punishment which is guaranteed by the State and Federal Constitutions, and as a result of this "deliberate indifference" which is violative of the state and federal constitutions, the Plaintiff has sustained injuries for which all parties should be held liable.

### II. PARTIES:

PLAINTIFF:

3. RAFAEL VAZQUEZ (Plaintiff) is presently serving a criminal

sentence in the custody of The Pennsylvania Department of Corrections (Hereafter referred to as The D.O.C.), under inmate number: LG-3413. He is now currently housed at SCI Dallas, located at 1000 Follies Road, Dallas, Pa. 18612.

**DEFENDANTS:**

4. Defendant, JOHN WETZEL, at all times relevant to this action was/is employed as the Secretary of the Pa. D.O.C. His mailing address for all matters pertinent to this case shall be noted as: The Governor's Office of Chief Counsel, Pa. DOC, 1920 Technology Parkway, Mechanicsburg, Pa. 17050.

5. Defendant, JOHN McGINLEY, at all times relevant to this action was/is employed as The Superintendent of The State Correctional Institution at Coal Township, located at, 1 Kelly Drive, Coal Township, Pa. 17868.

6. Defendant, MR. MIRACHI, at all times relevant to this action, was/is the Deputy Superintendent of The State Correctional Institution at Coal Township, located at, 1 Kelly Drive, Coal Township, Pa. 17868.

7. Defendant, MR. LUSCAVAGE, at all times relevant to this action, was/is employed as the Deputy Superintendent of The State Correctional Institution at Coal Township, located at, 1 Kelly Drive, Coal Township, Pa. 17868.

8. Defendant, MR. FOULDS, at all times relevant to this action was/is employed as the Major of the Guard for The State Correctional Institution at Coal Township, located at, 1 Kelly Drive, Coal Township, Pa. 17868.

9. Defendant, MR. BURNS, at all time relevant to this action, was/is employed as the Security Captain at the State Correctional Institution at Coal Township, located at, 1 Kelly Drive, Coal

Township, Pa. 17868.

10. Defendant, MR. NEITZ, at all times relevant to this action, was/is employed as a Security Lieutenant at The State Correctional Institution at Coal Township, located at, 1 Kelly Drive, Coal Township, Pa. 17868.

11. Defendant, JOHN DOE ONE, at all times relevant to this action, was/is employed as a Sergeant at the State Correctional Institution at Coal Township, located at, 1 Kelly Drive, Coal Township, Pa. 17868.

12. Defendant, JOHN DOE TWO, at all times relevant to this action, is/was a correctional officer employed at The State Correctional Institution at Coal Township, located at, 1 Kelly Drive, Coal Township, Pa. 17868.

## JURISDICTION:

13. Jurisdiction is asserted pursuant to the United States Constitution, The Pennsylvania Constitution, and 42 U.S.C. §1983, to redress the deprivation of those rights secured by the State and Federal Constitution, deprived by persons acting under the color of state law. The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§1331, 1343(a)(3), and Pa. Const. Art. V. Section 5, through 42 Pa.C.S. 931 and Pa.Civ.Proc. Rule 1001(b)(2).

## STATEMENT OF FACTS:

14. The Plaintiff was assigned by the Pa. DOC to be detained for the purposes of his confinement at SCI Coal Township in the year 2016. At that time, this facility was among a number of state correctional facilities under the direct supervision and control of defendant Wetzel.

15. Concomitant with the assignation as Secretary of the Pa.

DOC during all times relevant to the matters claimed herein, it was the specific duty of this defendant to develop policies and procedures that will constitutionally effectuate the task of the PA. DOC to provide for the care and custody of all inmates assigned due to criminal convictions under the authority of the Pa. DOC during the period of their confinement, and to insure that those policies and procedures are carried out in a judicious and effective manner that is consistent with the principles of the state and federal constitutions.

16. Defendant, John McGinley, was assigned as the Superintendent of SCI Coal Township, and in his capacity as the Superintendent, it is his duty to effectuate within that facility, all policies and procedures instituted by the DOC which is under the direct supervision of Defendant Wetzel.

17. Defendants Mirachi and Luscavage were at all times relevant to the matters before this court, assigned as Deputy Superintendents whose specific assignation was to aid in the efficient running of SCI Coal township as it relates to implementing policies and procedures under the direct supervision of defendant McGinley.

18. Defendant, Major Foulds, as it relates to all matters relevant to the claims set forth herein, was assigned during the relevant period of the plaintiff's confinement at SCI Coal Township, as the Major of the Guard, and it is his specific duty to oversee the direct supervision of all officers working within the facility as it relates to policies and procedures promulgated by the Pa. DOC as it relates to its task of custody and care of all inmates housed within the facility.

19. Defendant, John Doe #1, was for all purposes relevant to the claims set forth herein, assigned and employed as an officer with the rank of Sergeant, whose specific assignation is the oversight of all correctional officers in his area of authority

at SCI Coal Township. As an individual in this supervisory capacity, it is his task to implement policies and procedures promulgated by the Pa. DOC as it relates to the State Correctional Facility at Coal Township on a daily basis.

20. Defendant, John Doe #2, is an officer assigned at the rank of COI, and it is his duty to implement the policies and procedures promulgated by the Pa. DOC as it relates to care and custody of all inmates under the scope of his assigned area in the facility.

21. The Plaintiff remained in the custody of the aforementioned defendants at SCI Coal Township from the year 2016 until approximately May of 2018, and during some time in that period, the Plaintiff was on his way to the facility's dining hall when he was stopped by Defendant, John Doe #2.

22. The Plaintiff was searched by Defendant, John Doe #2, at which time he was found to be in possession of a weapon in violation of Pa. DOC policy.

23. The Plaintiff was immediately taken into custody and was interrogated by John Doe #2 concerning the reason for being in possession of a weapon.

24. It was during this interrogation that the Plaintiff informed defendant John Doe #2 that he needed to be in possession of the weapon as he was in fear of his life, and was concerned that he may be subjected to imminent danger by persons within the facility.

25. A DC 141 Misconduct report was prepared by defendant John Doe #2 and the plaintiff was taken to the facility's Restrictive Housing Unit pending disposition of the misconduct charges in the misconduct written by Defendant John Doe #2.

26. There were no other reports to security written by this

defendant to inform the Security Office that the Plaintiff had expressly stated that he was living under the fear of serious bodily harm by inmates within the facility.

27. Upon a determination of guilt by the facility's Hearing Examiner, the plaintiff received a disciplinary sanction of 90 days confinement in the facility's Restrictive Housing Unit for being in possession of an illegal weapon.

28. Continuing to fear for his safety during the period of his confinement in the Restrictive Housing Unit (Hereafter referred to as the RHU), the plaintiff wrote a number of DC-135A (Inmate Request to Staff slips) to the Security Department of the Facility, directing the requests to Defendant, Capt. Burns, explaining his concerns related to the threat of imminent bodily harm to his person, and this individual never responded or came to interview him regarding this matter.

29. On 6/18/18, the Plaintiff went a step further in giving appropriate notice to facility staff by writing another DC-135A form to defendant, Deputy Luscavage, informing him that he had written to the Security Office care of Defendant Capt. Burns, and in that request he again reiterated that no one had even bothered to interview him regarding his concerns related to the threats to his person he was aware of.

30. Defendant, Deputy Luscavage, responded stating, "Will review" on 6/27/18, but no further action was taken related to any investigative steps the defendant took that the plaintiff is aware of, as he was never interviewed by any staff related to the threats he claimed presented an imminent danger to his person. (See: Plaintiff's Exhibits filed on 7/18/19 marked as Exhibit #1)

31. Having waited a sufficient time and seeing that no one had come to interview him, the Plaintiff filed another DC-135A Request to Staff form to Defendant, Deputy Mirachi informing him that he was in fear for his safety, AND informing him that he had

contacted Major Burns at Security to no avail concerning his fear that he was in imminent danger of serious bodily harm if returned back into the facility's general population. In his response dated, 6/29/18, defendant Deputy Mirachi stated that he had forwarded his request to appropriate staff. (See: Plaintiff's Exhibit #2 filed with this court on 7/18/19)

32. Upon discernment that staff were not acting with any diligence concerning his safety, the Plaintiff filed a DC-804 Grievance numbered 745560, again raising concerns regarding threats to his safety, and informing them that if he was returned to general population, he would be in danger.

33. As a follow up to this grievance, the plaintiff additionally filed another DC-135A Request to Staff form to Defendant, Superintendent McGinley on 7/8/18. In that request, the plaintiff explained that he had contacted defendants, Security Captain Burns, Deputy Luscavage, and Deputy Mirarchi regarding his concern for his safety as a result of a dispute he was aware of with individuals connected to a gang in the facility called, "The Bloods". Defendant McGinley responded on, 7/9/18, stating that, "PRC looks into these issues and makes a determination." (See: Plaintiff's Exhibit #4, filed with the court on 7/18/19)

34. Still concerned that his notices were being ignored by staff and that the magnitude of his fears were being disregarded, the plaintiff AGAIN filed a notice to Deputy Luscavage via a DC-135A Request to Staff Form, on 7/12/18, notifying him of his conflict with individuals in the "Bloods Gang". He did this as this defendant was someone who regularly participated on the P.R.C. Board referenced to by Defendant McGinley in Exhibit #4. It should also be noted that the plaintiff additionally informed this defendant that it was his belief that Captain Burns was the individual who was actually behind the discrepancies he was facing with individuals affiliated with this gang. (See: Plaintiff's Exhibit #5 filed with the court on 7/18/19)

35. In responding to this notification, Defendant Luscavage wrote back to the plaintiff on 7/18/18 stating, "This has been referred to the Inst. Security Office." (See: Exhibit #5 cited above)

36. The Plaintiff was subsequently returned to General Population upon completion of his RHU confinement, and on August 23, 2018, the Plaintiff was in fact assaulted while defendant Lt. Neitz; who is part of the facility's Security Office who the Plaintiff was repeatedly warning staff were the reason for the controversy in the first place, observed the altercation. (See: Exhibit #6 mentioned above as it relates to the Reporting Officer's Signature)

37. The Plaintiff received 120 Days Disciplinary Custody Confinement as punishment for the altercation, and during the period of that confinement, the petitioner again instituted efforts at resolution through the grievance process by filing a grievance numbered as #773337 on 11/19/18. (See: Plaintiff's Exhibits filed with this court on 7/18/19 which is numbered as Exhibit #7)

38. In that grievance, the Plaintiff again reiterated his claims against the Security Staff and PRC staff of SCI Coal Township for their failure to take steps to protect the plaintiff from exposure to threats that they were repeatedly made aware of.

39. On 11/26/18, the Plaintiff was issued a Grievance Rejection Notice, rejecting his grievance due to its relation to another grievance that was currently under review, numbered as grievance #745560. In point of fact, this grievance was the initial grievance filed related to his concerns that he would be put back into population in the first place. Yet, here the petitioner was complaining of ANOTHER instance related to his concern that he would AGAIN be placed back into general population to face ANOTHER instance of physical assault. (See: Exhibit #8 filed with this court on 7/18/19)

40. The Plaintiff again attempted to file a follow-up grievance numbered as grievance #788422, and that grievance was summarily denied as evinced by Exhibit #9, where the petitioner, because of his complaints, was not receiving any response to subsequent grievances he attempted to file to redress the deprivations he alleges herein.

41. The plaintiff again filed ANOTHER grievance on 1/28/19, again protesting the fact that he would be returned back into the general population by being threatened with prolonged confinement in the RHU for refusing a direct order or taking his chances in population. Once again, the Plaintiff received no responses to his complaints and was returned to general population with disregard for all of his remonstrations to the contrary. (See: Plaintiff's Exhibit 10a and 10b filed with this court on 7/18/19)

42. Upon a return back into general population, the Plaintiff was AGAIN assaulted on January 19, 2019. As a result of this assault, the plaintiff sustained injuries for which he was hospitalized.

43. On or about January 31, 2019, the Plaintiff was released from the facility's infirmary.

44. Upon release, the plaintiff corresponded with Defendant Major Foulds. Subsequent to his correspondence the plaintiff was issued a written response on 2/1/19 by Defendant, Major Foulds, informing him of an impending transfer. (See: Plaintiff's Exhibit: #11, filed with this court on 7/18/19.)

45. The plaintiff remained on Administrative custody status pending his transfer, and has remained under treatment for his physical and psychological injuries to date.

## EXHAUSTION OF REMEDIES:

46. The petitioner has exhausted all remedies via the available grievance process as substantiated by the facts set forth above.

## CAUSES OF ACTION:

47. The Plaintiff supports the following claims by reference to the previous paragraphs of this complaint.

48. As it relates to Defendant Wetzel, he was deliberately indifferent to the substantial risk to inmate on inmate violence at the State Correctional Institution at Coal Township, in that he failed to implement any policies, procedures, training, or oversight of already existing policies that would be sufficient to offer adequate protection to a person who is under threat of bodily harm by individuals affiliated with Gangs within any facility.

49. More specifically, inmates are left to fend for themselves without any procedural guidance through which they can adequately seek redress of their safety concerns, and as such, this leaves them at the mercy of the procedural whims of staff who may or may not elect to offer adequate measures to protect the safety of those individuals like the plaintiff.

50. There are also no remedies available under any policy or procedure that an inmate in the circumstances that the plaintiff had to endure, where he can seek oversight of staff when under the threat of physical harm outside of those persons who work in concert with anyone he claims is an individual acting deliberately indifferent to his safety and well-being. Thus, because defendant Wetzel has not established any staff oversight avenues through which an individual in a circumstance like the plaintiff could seek fair and adequate redress, the plaintiff avers that he has been denied the rights guaranteed to him under the Due Process Clause of the 14th Amendment, that he has been denied Equal Protection under the law, and has been subjected to cruel and unusual punishment, both being violations of the state and federal constitution.

51. As it relates to all remaining defendants named herein, the petitioner does herein aver that each individual was adequately informed by the plaintiff of the ongoing threat to his person and failed to take steps to offer adequate care that was so egregious as to amount to deliberate indifference to his health, safety and well-being.

52. The defendants have further failed to intervene to protect the plaintiff from physical harm, and as such, have deprived him of the rights afforded to him under the Due Process Clause of the Fourteenth Amendment, and have additionally subjected the Plaintiff to Cruel and Unusual Punishment in violation of the Eighth Amendment to the federal constitution as well as each amendment's counterpart/equivalent guaranteed by the Pa. Constitution.

53. Each Defendant named herein is being sued in their Official and Individual capacities, and at all times relevant herein, the defendants were "persons" for purposes of 42 U.S.C. Section 1983 and acted under color of law to deprive the plaintiff of his constitutional rights as set forth herein.

## PREVIOUS LAWSUITS BY PLAINTIFF:

54. The Plaintiff has filed no other lawsuits dealing with the same facts involved in this action or otherwise relating to his imprisonment.

## PRAYER FOR RELIEF:

WHEREFORE, the Plaintiff, Mr. Rafael Vazquez, respectfully prays that this court enter an order:

55. Granting, PUNITIVE DAMAGES in the amount of $900,000.

56. Granting DECLARATORY JUDGEMENT that the actions complained of herein amount to a constitutional violation.

57. Granting, INJUNCTIVE RELIEF, in the form of an injunction

mandating the Pa. DOC to enact policies and procedures that create an Action Review Committee that is "outside" of the supervision of the Pa. DOC that can review actions taken by DOC staff in relation to claims of negligence and safety related to those incarcerated in the DOC. This board would be able to investigate the conduct of staff and all actions that may directly affect the safety of inmates in their care and custody that would be beyond the scope of the grievance mechanism that is within the purview of the Pa. DOC and its employees.

58. Granting, COMPENSATORY DAMAGES, in an amount to be determined upon completion of all litigation that would repay the Plaintiff for all expenses incurred in the litigation of this Civil Action.

59. Granting, any other relief determined by this court as allowable by law.

## CONCLUSION:

60. Trial by Jury is hereby demanded on all claims alleged herein, and the parties are hereby given notice, pursuant to the F.R.C.P. 38(a)-(c).

Respectfully Submitted,

Rafael Vazquez #LG-3413
1000 Follies Road
Dallas, Pa. 18612

Date: 8/26/20

**VERIFICATION:**

Pursuant to 28 USC §1746, I, Rafael Vazquez, do declare and verify, under penalty of perjury under the laws of the United States of America, that I have read the foregoing and that it is true and correct to the best of my belief and knowledge.

Respectfully,

Rafael Vazquez / LG-3413
1000 Follies Road
Dallas, Pa. 18612

Date: 8/26/20